May it please the Court, I am John McConaughey and I represent Janina Hoskins, Trustee in Bankruptcy of Joseph Viola. The Bankruptcy Code empowers a trustee to sue fraudulent quote transferees. And the single issue before this Court is who or what is a quote transferee. A number of courts below and elsewhere and in fact this Court have wrestled with this problem. And the problem is that the statutory definition of quote transfer contained in Bankruptcy Code section 101-54 is so broad that a literal reading of the text would include entities like the postal service, a title company, a messenger service as someone that would come into its sweep and be potentially liable for a fraudulent transfer. To prevent this kind of absurdity and injustice, the Court's most notably bonded financial service, the Seventh Circuit case that we've all talked about, has developed an equitable exception to the statutory definition of transferee, the mere conduit doctrine. Here Citigroup would have been a mere conduit if it had simply processed the funds deposited by the fraudster Viola as a conventional financial institution. I think it would have been a mere conduit under traditional principles of civil liability that mere passive action and knowledge doesn't impose liability if it had known that Mr. Viola was running a Ponzi scheme and did nothing about it. But here the allegations of the complaint, which I think are quite detailed, establish that they did much more than that. They were active participants in the scheme and indeed were actively involved in getting this new infusion of this $8 million into the account to fuel the Ponzi scheme. Did the bank ever have the right to any of the funds simply by virtue of the funds being in the account, or was the bank making its money merely by processing fees and things incident to being a bank holding funds for others? The bank as an institution, it is true that the latter is the case, that they were just getting fees. But this officer, Rick Schrammel, who because he was a vice president, we believe that under principles of vicarious liability his actions must be charged against the bank. And he was making money on commissions. Right. But I understand that. And the bank does not seem to have acted very well here. No. But does that make the bank a transferee? That's the question. That's the question. And, you know, the briefs on both sides of the cases are full of all this technical and really it comes down to the question of is somebody entitled to an equitable exception to a textual reading of the bankruptcy code if they have acted inequitably? The trustee asserts no. That's my point. I can keep talking and use up my time, but I won't. I'll just say one other, I'll just sort of, I said there was a single issue. There's probably two. The second I'll just raise very briefly because of primarily the prior case, this question of subject matter jurisdiction. I, you know, it's easy to argue subject matter, subject matter jurisdiction, there's no subject matter jurisdiction when you've lost in front of the cases that, in front of the courts that you say have no jurisdiction. I'm not arguing that. We've consistently argued that the bankruptcy court did have subject matter jurisdiction over this matter because Citigroup did file proofs of claim in the case. That view was affirmed by this court's recent decision in Bellingham Insurance Agency. The Supreme Court does have that now because of a conflict with the Sixth Circuit. But to make no mistake, the trustee believes that there was subject matter jurisdiction for both the bankruptcy court. Do we need to hold the case for Arkeson? If the Court holds that there's no such thing as consent or at least implied consent, then what happens? Well, then I think everything is reversed. I would certainly hold it if you were going to publish the decision, but I think you do. So just walk me through that very briefly. If the Supreme Court holds that there's no such thing as consent to jurisdiction, then what happens? What stays in the case? What's still alive in your case? What goes? I think if that's the case, the, I don't know if void is the right term, but both the bankruptcy court and the BAP decisions would be void for lack of subject matter jurisdiction. And I would then have the option. Because these are non-corporate, the remaining claims are non-core? Correct. All claims, the remaining are non-core? Everything is non-core. This is a classic fraudulent transfer case, nothing else. There are no remaining claims. And I think I would have to start all over again in San Francisco Superior Court or the district court in San Francisco. And I'll reserve the balance of my time for rebuttal. Thanks very much. Unless there's any other questions. I don't think so. Thank you very much. Good morning. May it please the Court. Stephen Perovich, Kiesel, Young & Logan, on behalf of appellees, the city defendants. There are three issues that we'd like to reiterate and discuss here today. The first of those issues is that, as we've briefed at length, under the Ninth Circuit's dominion test, defendants here are not transferees of the transfers that are alleged in the trustees' First and Second Amendment complaints. Second, with this appeal, the trustee is essentially asking this court to reject its opinion and its dominion test as set forth in the incumbent opinion in favor of applying equitable tests that were rejected in incumbent. We see absolutely no reason why this court should reject its own tests in favor of other circuits' tests in this case. The third issue is that Judge Mottoli at the Bankruptcy Court and the bankruptcy appellate panel properly applied the incumbent test here in order to dismiss the trustees' Second Amendment complaint. Counsel, would you turn to the jurisdiction question just for a minute? Yes, Your Honor. We have not opposed or disputed the court's jurisdiction in this case at any point along the way. We have filed proofs of claim in this matter. We've appeared. As far as we're concerned, jurisdiction is not an issue. Is it a non – are your claims non-core? Are the claims at issue in the case still here, are they core or non-core? Your Honor, we believe they're core. Do you think that they are core? Mr. McConnell, he says they're non-core. We believe that these are classic fraudulent transfer avoidance claims brought under sections 544 and 548 of the Bankruptcy Code. Okay. Does that make them core or non-core? Your Honor, we believe that they're core. So you dispute Mr. McConnell's claim that they're non-core claims? Yes, Your Honor. Whose claims are you talking about? Are you talking about the bank's claims or the bank's own claims? No, Your Honor. Which claims are you referring to now? Your Honor, we're referring to Mr. McConnell's claims against the bank. So these are the trustees' claims against the bank. You think that those are core claims? Yes, Your Honor. What does Stern say about that? Your Honor, you know, that issue wasn't briefed for this appeal by the other side. We've not taken a position with respect to that. We've just not disputed that this Court has jurisdiction over those issues. Okay. Your Honor, as this Court very well knows, the bankruptcy trustee is a creature of the Bankruptcy Code. The bankruptcy trustee can only bring certain claims for relief that are set forth and that are specifically set forth in the Bankruptcy Code. The trustee may not bring just any sort of claim for relief as a regular plaintiff may bring. Here, the bankruptcy trustee has alleged claims for fraudulent transfers under Sections 544 and 548 of the Bankruptcy Code. The particular claims that the trustee seeks to avoid here are the transfers that the debtor allegedly made into the Napolitano trust accounts. The Bankruptcy Court provides that if a trustee can establish an avoidable fraudulent transfer, the trustee may then recover that transfer from the transferee of the transfer. This Court and incumbent specifically set forth that a party is a transferee under 550A of the Bankruptcy Code only if that party has legal title to the funds and should use the funds as it wishes. Here, the defendants are not transferees because the Second Amendment complaint does not allege that the defendants ever had title to the funds or the right to use the funds as they wished. In the Second Amendment complaint, the trustee specifically alleges that the debtor, Viola, was the acting trustee and was always the acting trustee over the Napolitano trust accounts. The Second Amendment complaint further alleges that the debtor, Viola, used the funds as the debtor wished in order to finance a bakery, to finance the development of a sports car, to finance and make distributions through his Ponzi scheme, to pay his own living expenses. Nowhere does the trustee actually allege, and the trustee cannot allege, that the defendants actually took legal title to the funds or used the funds as the defendants wished. The trustee argues only that the defendants are transferees because the defendants allegedly acted in bad faith. The trustee does not rely on the incumbent decision and does not apply the incumbent decision or the incumbent test to this case. The trustee only applies the equitable-based reasoning from other circuits and asks this Court to ignore the Ninth Circuit's test to set forth an incumbent. The trustee argues that the defendants are transferees because they didn't prevent the debtor from perpetrating and running his Ponzi scheme. That only highlights the fact that the defendants did not ever exercise dominion over the funds. Section 550A requires the Court to look at the particular transfer that the trustee is seeking to avoid here, and that is the debtor's funding of the trust accounts by placing monies into those trust accounts. Here we have a situation where the debtor allegedly obtained money by perpetrating a Ponzi scheme and put that money into accounts that the debtor as a trustee had title to and that the debtor then used these funds as the debtor wished. Pursuant to the Ninth Circuit's dominion test in incumbent, that establishes that the debtor is the trustee of those funds. The debtor then allegedly made subsequent transfers from those trust accounts to third parties to finance the bakery, to finance the development of the sports car, but that's not the transfer that the trustee is seeking to avoid here. The trustee is seeking to avoid the initial funding and the initial placement of the funds into the trust account. Because the defendants never had title to those funds and never did what they wished with those funds, the defendants are not transferees of that particular transfer that the trustee is seeking to avoid. The trustee is here arguing that because the Bankruptcy Code's definition of the term transfer is relatively broad, the defendants, by implication, became transferees. However, the trustee ignores that in incumbent, this court specifically defined the term transferee as an entity that takes title to property and uses those funds as it wishes. Because defendants do not meet that definition and because the trustee does not really allege that the defendants meet that definition, defendants are not transferees. This court has no reason for overturning its established precedent in incumbent in favor of applying the tests developed by other circuits. In the incumbent decision, this court specifically reviewed and evaluated the reasoning behind other circuits' tests. This court chose to reject other circuits' tests that rely on an equitable approach in favor of adopting the Seventh Circuit's test of set-forth and bonded. In doing so, this court specifically ruled that because we are applying the Seventh Circuit's bonded test, we take care not to apply the equitable test set forth by other circuits. There is no, absolutely no reason for this court to change its position here and to not apply. As you know, we're bound by our precedent, so there's no reason to beat that dead horse, I wouldn't think. Your Honor, for the time being, I mean, that's – if the Court has any questions for me, I'm happy to answer those at this time. I think that does it, Mr. Garner. Thank you. Thank you. Mr. McConaghy. Yes, Your Honor. There's three points I'd like to make. First, I'd like to correct and refine my comment on whether this is a core case. This fraudulent transfer case is defined by the statute as a, quote, core proceeding under 28 U.S.C. Section 157b2e. But as Judge Fletcher noted, Stern v. Marshall has essentially said that that's unconstitutional. And so there's got to be an independent basis for a bankruptcy court to have a constitutional jurisdiction. And in Bellingham, this court held, consistent with cases going back to the 19th century, that when one files a proof of claim, they consent to the equitable jurisdiction of a non-Article III judge. So that's the technically precise way of addressing the jurisdiction. Two things about incumbent. Number one, incumbent involves an effort by a bankruptcy trustee equivalent creditors committee to recover a preference. And preferences and fraudulent transfers look alike in the bankruptcy code. But there is absolutely no moral culpability connected with accepting a preference. And thus, sort of the, an incumbent indeed found that the people were transferees because they had a certain amount of control over what to do with these monies that they held in trust. But I would submit that in a case where we're dealing with intentional fraud by Mr. Viola, active participation in that fraud by this vice president of Citigroup, quite substantially, as alleged in the complaint, that it wouldn't be disregarding this Court's precedent in incumbent to come up with a more finely crafted rule to deal with this kind of morally culpable conduct. Finally, due to the unique nature of this Napolitano trust account, how it was set up, the trust terms, the fact that Citi was named as a successor trustee, as we have asserted in our briefs, we think that even if you don't expand or refine incumbent at all, Citi is still a transferee under incumbent. Thank you. Thank you, Your Honor. Mr. Paravich, thank you. The case just argued is submitted.
judges: Silverman, Fletcher, Bybee